Good afternoon. The United States Court of Appeals for the Ninth Circuit is now in session. Good afternoon, counsel. I see both counsel on camera. We're set this afternoon for argument in the case of Hooper v. Brnovich. When you're ready, counsel, you may begin. Good afternoon. May it please the court, my name is Nicole List and I represent Murray Hooper. I would respectfully request to reserve three minutes for my rebuttal. All right. This capital crime has all the earmarks of the crimes that were committed by the two principal accusers in this case. Artie Merrill and George Campagnoni. Together, the two of them committed similar home invasions in the same geographic area during the same time using the same M.O. These men denied being in the home of the Redmonds on the night of the attack. Mr. Hooper believes that these men framed him and that through advanced forensic fingerprint testing, he can prove that they were actual crime participants and that their trial testimony is perjurous. Counsel, if I can interrupt you for a moment and we'll get to the merits this afternoon, I promise, but we issued an order asking the parties to be prepared to address the Rooker-Feldman jurisdictional issue. We said in Cooper that in assessing the appeal, we really look to the relief that's being sought. And here, what Mr. Hooper is seeking is an order directing that the fingerprints be run through the databases and the DNA evidence be released for testing. Why isn't that just asking for reversal of the state court's decision in this case? Because in this case, we are not arguing that there is a misapplication of the statute. What we are arguing is that this is a challenge to the categorical prohibition of testing that's applicable to any applicant, and therefore it does violate due process. I'm having some trouble understanding that, Counsel. So what in the statute or the Supreme Court of Arizona's opinion or the Superior Court of Maricopa County's opinion makes this categorically unavailable as opposed to both courts simply saying here it's unavailable to Mr. Hooper? We believe that it's a categorical denial because the standard that they are applying is not one of reasonable probability. The standard that the courts here are applying is one of actual innocence. The words actual innocence don't appear in either one of those opinions, right? I would agree with you, yes. So where does it say in either the Superior Court or the Supreme Court opinion that Mr. Hooper to take advantage of the statute has to show that he was actually innocent? They do so by way of their analysis or I guess lack thereof. What they're taking, they've mentioned that even if Mr. Hooper got this testing and the fingerprints matched Merrill or they matched Campagnoni, that that wouldn't be enough. But what seems to be the most... I agree with you that that's what they said, but back to Judge Bennett's question, how does that show that he has to show actual innocence? I mean, what the opinion seemed to be based on was the overwhelming evidence of Mr. Hooper's guilt. And so once you get to an overwhelming evidence threshold, this was not a circumstantial evidence case, it was an overwhelming evidence case. So why doesn't that change the analysis and make it individualized? Well, I guess there's two parts to that. I mean, I respectfully would disagree with, I do realize it is this court's opinion that the evidence is overwhelming. However, I think once everything is broken down, it is not as overwhelming as it seems. The evidence that is pointed to within this particular case does not point to Mr. Hooper. For example, the plane tickets, Dean Bauer testified that plane tickets were bought under assumed names. He doesn't know who they were for or who used them. The phone calls were placed from Arnie Merrill's home to a number in Chicago that he had called previously. So again, that doesn't link to Mr. Hooper specifically. The receipt that came out of Edward McCall. But what you're saying is that the Arizona State Court came up with a categorical rule and that's what they did not do. Their opinion explained that the analysis is really a way of the evidence with the explanation of why another person's fingerprint on the DNA might not provide the evidence that you need. So it's an application of the rules to Mr. Hooper and not a categorical rule, right? Well, in doing so, what they did is they assumed all of the testimony that came forth at trial was true. As opposed to weighing it out and determining whether there was a reasonable probability. They also specifically looked to the trial evidence, whereas the statute calls for may not have been charged or convicted. Getting back to Judge Nguyen's first question. I mean, it really sounds like what you're arguing is the courts that have looked at the evidence, including this panel, looked at it incorrectly. The Superior Court looked at it incorrectly. The Supreme Court looked at it incorrectly. And thus that caused the Supreme Court to make an individualized decision unfair to Mr. Hooper. But if that's what they did, then this procedural route is clearly barred by Rooker-Feldman. So I need to really understand more how if you're winning turns on the Supreme Court and the Superior Court just looked at all the facts wrong. They thought it was overwhelming, but it really wasn't. And therefore, they denied Mr. Hooper the relief Mr. Hooper was entitled to under the Arizona statutes. Then this is just really an appeal of their decision, which the Supreme Court and our court has said you can't have. So tell me why we're wrong. Tell me why that that hypothesis as to what you're arguing is wrong. Again, I would I would fall back on the fact that the Arizona statute is explicit and it's clear. Wait, the statute or the rulings? Because the statute seems very clear that it talks about the reasonable probability in the specific case. So are you challenging the statute? Are you challenging the rulings interpretation of the statute? The rulings interpretation of the statute. Because the way that it is laid out, the the courts must presume that the evidence is exculpable. And then at that point, make an analysis with regards to the reasonable probability of whether the outcome would have changed. And that is for both the conviction or whether or not the person would have been charged. So when you look at the evidence as a whole, sorry, not evidence. When you look at, for example, the fingerprints, if the fingerprints of in this particular case, Arnie Merrill or George Campagnoni had been found before Mr. Cooper was before Mr. Cooper was charged, a reasonable and ethical prosecutor would seemingly not charge Mr. Cooper when the fingerprints that matched were the ones of someone who's committing the same exact crime. Your arguments, I think your arguments here are just leading into the concern that we have because your arguments are all about the individual case. You know, Hooper's individual case. And that's you seem to be relitigating exactly what you've already litigated in the state courts. And we can't do that. I mean, I suppose what I can do is I can balance it with. With, for example, a sex assault case and a sex assault case, you're going to have a witness who is going to ID the defendant and say, that's the person I know for a fact, this is the person they're tried, they're convicted. Years later, they're seeking DNA testing. And by the way that the Arizona courts have interpreted this, they're going to look and say, well, there's overwhelming evidence in this case because they were ID. Therefore, you don't meet the reasonable probability. Maybe, maybe, maybe not. We don't know. But but I mean, where even if there were a rule that where there's overwhelming evidence, you can't get DNA testing. Would that be enough for you? I mean, it seems like what you have to rest your argument on. They imposed an actual innocence standard. What if it wasn't an actual innocence standard? What if it was just, hey, where there's overwhelming evidence, we're not going to give you the DNA testing. Would that, in your opinion, be enough of a hook to get you out of the Rooker Feldman doctrine? I believe that they still have to take that and balance that with the reasonable probability standard. You have to look at how that evidence would affect what what is there, whether it be this case or any other case that comes before the court. Counsel, I'm going to direct you to page five of six of the Supreme Court's decision. And it is the second full paragraph up from the bottom of the page, not the not the little paragraphs at the bottom. So let me know when you're there because I'm going to read something from that. Yes. I may not have that particular. OK, so I'll read it. OK, thank you. But the Arizona Supreme Court said the Superior Court applied the correct analysis. Colin, whether Hooper had established if potentially exculpable results, i.e. someone else's fingerprints at the crime scene were obtained through fingerprint testing. Is there a reasonable probability he would not have been prosecuted or convicted? So that's what they restated as what the the the one of the statute said. Was that a fair restatement of the statute? I believe it's a fair restatement of the statute. However, it is the in incorrect analysis again. So they they they correctly cited what they're supposed to do, what the Superior Court is supposed to do. But then they didn't. In your view, they misapplied the correct test, which they cited. Sorry, can you repeat that one more time? They cited the correct test that the statute establishes. But then both they and the Superior Court misapplied the test to Mr. Hooper. They misapplied the test by creating an actual innocent standard, which presumably would be done in every case that comes before the court. If this is the standard they're going to use, it creates a more heightened and unreasonably unconstitutional standard. The standard is a reasonable probability, not an actual innocence. So your argument I want to make sure I understand is that they said the right things. But the application, in effect, applies the actual innocent standard. So it's the application. That's the issue. It's the it's the application as a whole. Yes. All right. I know you wanted to get to the merits as well. Yes. Just briefly, although it is mentioned within all of the briefing before this court, I do also understand that this panel is very familiar with the facts of this case in particular. We do believe that we meet all of the standards. We believe that we are likely to succeed on the merits as explained in the brief. Obviously, Mr. Hooper would suffer irreparable harm because there is an impending execution that is set at 10 a.m. tomorrow. We are less than 24 hours away at this point. The balance of hardship and the further of public interest. One of the one of the issues with the public interest that I do know that the attorney general's office has brought up is the lateness of bringing this to the court. However, I do just want to confirm I did put it in my briefing when we requested this testing back in September on September 22nd. There was more than enough time to have completed the DNA testing as well as the fingerprint testing. We did check with DPS. They were willing to and could run all of that before this execution happened. That is why our original are multiple original requests did not. There was no state that was a company with those because at the time, that's only that's only to the timing. I mean, you don't disagree that if the state didn't believe that the statute was complied with, then they shouldn't have allowed more DNA testing. Right. I would agree with that. Yes. Do you want to briefly address? You've got another motion pending in the district court. It looks like that's on the Brady issues. There is an opposition due at 3 p.m. Maybe you can't speculate, but where do you see that going at this point? Well, at this point, I'm not sure how familiar the court is with all of the briefing from that specific issue. I think I think we're pretty familiar on this list. OK, so, you know, essentially we do have a we do have a federal habeas that is pending before the federal district court in Arizona. We we hope to get an evidentiary hearing and we're discovering out of that. We do believe that there was, in fact, a Brady violation. I know that the the rulings that have come out of the lower courts obviously don't agree with that. And that's why we are right. So you're either going to get you're either going to get a stay and discovery. What if you don't get that? What do you anticipate happening or is it too early to say? I would just I mean, as you pointed out, we're at we're sitting on a timetable, too. We anticipate it as far as anticipating what's to come next. We do intend to appeal that up to the Ninth Circuit if we are not successful, if we don't get discovery and or don't get a stay. Those are the two things that we're requesting. In addition to an evidentiary hearing, we would obviously need time to go through all of the discovery. If we were to get discovery, we need time to go through all of that in order to address the Brady issue. Judge Nguyen, may I ask a related timing question? Have you heard anything from the Supreme Court on your cert petition and motion for an emergency stay directed to Justice Kagan? Not that I know of, not as of when I came into this room at probably about one thirty. So if something has come in since then, I've not seen it. All right. I know you wanted to save some time, but I want to make sure that all of my colleagues have questions, if they have any, get answered. Of course. Judge Bennet? Judge Nelson? I think I think I'm I'm fine for now. Judge Nguyen, I would I would note, as I think I took up a lot of Ms. List's time with with my questions. And like all of us, I want to make sure that Ms. List has the time she believes that that she she needs here, especially because, again, I took took up so much time with with my questions. That's not a problem. Let's hear from the state. And then if Ms. List needs additional time, I'm happy to add that. Thank you. Good afternoon, David. All on behalf of the Arizona Attorney General's office, I'd like to start by discussing the Rooker-Feldman doctrine. Can I ask you, you raised a blow in the district court and you didn't raise it in your brief to us. Is that just an implication of the time, the time frame that you're on? Or is there a conscious decision on that? No, it's really a result of the time frame we're on and the multiple briefings that we're responding to, even as we speak. We do certainly believe that the district court got it wrong, that the district court did not have jurisdiction to consider this issue because this case is more similar to Cooper than it is to Skinner. Therefore, this should have not been able to be brought as a 1983 action and would be more appropriately filed in a habeas petition, of course, which would then require this court's approval because it would be likely second or successive. So we do believe that this case is more in line with Cooper. There was no categorical bar. The state courts never said that all defendants who have overwhelming evidence of their guilt, none of them will ever be able to achieve or receive DNA testing or other forensic evidence testing in all cases. That's not the standard they applied. As this court has already stated, they applied the statutory analysis in both the fingerprint testing and DNA testing statutes. They cited the correct standard, they applied the correct standard. The only discussion related to overwhelming evidence was during the analysis of whether or not there was a reasonable probability that if Hooper obtains the results from forensic testing that he hopes he will achieve, whether or not there would be a reasonable probability he would not have been prosecuted or convicted. That is where the overwhelming evidence analysis or mention came in to play. And based on the overwhelming evidence as one factor, the Superior Court and then, of course, the Arizona Supreme Court determined there was no reasonable probability that he would not have been prosecuted or convicted with those results that they would hope. Just to clarify the state's position on this, is there a waiver problem that it wasn't included in the brief on the Rooker-Feldman Doctrine? Are you saying that there are... I'm wondering if the state waived it. No, I do not believe we waived it. I think this court can take that issue up and find that the district court did not have jurisdiction. Why? Because it's a jurisdictional issue? You agree that it's an Article 3 issue? It is a jurisdictional issue, absolutely. And the district court did not have jurisdiction to really consider it at all. If we were to rule on the Rooker-Feldman issue, should we reach the merits as well, just given the tight timeframe we have here? That would be our request, yes. I think this court should reach the merits. And there we do agree with the district court's finding that there is no reasonable likelihood of success on the merits of this case. I don't necessarily, unless the court wants me to go into a deep factual analysis. Of course, we disagree with many of the facts that they rely on. And certainly the power that they believe certain DNA results have on this case. Even the results, DNA or fingerprint connecting to Merrill or Campignoni would not have achieved an acquittal or much less that they would not have even... Let me ask you about that, Mr. Ahl. So again, we're talking about hypothetically here, but that's what the statute talks about as well, right? Correct. So if hypothetically, Merrill's fingerprints were found on the knife. I mean, I agree that in the abstract, one wouldn't know when that could have happened, but what other explanation is there? What other reasonable explanation would there be if Merrill's fingerprints were on the knife that Merrill was one of the killers? And thus Merrill's entire testimony is open to questions. So the testing site is DNA on the knife. There was no request for fingerprint. Okay, I'm sorry. Yes. DNA on the knife. Yes. Fingerprints on other things, but DNA on the knife. And so to address that, there was opportunity for any sort of DNA to be transferred onto the knife from Merrill, whether it is a transfer because the knife was at his house prior to in Hooper's possession prior to the murder. Merrill was present at the, I believe it's called gun trader store when the knife was purchased or selected by Hooper. So there was opportunity prior to the killings for Merrill's DNA to get onto that knife. More importantly, even if it's just because his DNA is on it, none of that says that Hooper could not have held that knife and slashed Mr. Redman's throat with it. The presence of Merrill's DNA does not absolutely exclude Hooper at all. So that's why that would have no effect on that. I'm sure it might. Well, and actually related to the DNA wouldn't even really impeach Merrill's testimony more than it already was, or as this court found it was in the habeas decision in 2021. The presence of the DNA would really have very little impeaching or in no exculpatory effects on Hooper's conviction for these crimes. What about this? Why don't you address the same issue with regard to the fingerprints? So the fingerprints, as the Superior Court noted, I believe the Arizona Supreme Court, the fingerprints inside of the residence could only be used to impeach his statements that he was never in the residence. But it certainly could not be used to impeach or discredit Merrill Redman's testimony, which is something that Hooper argues. So just because his fingerprints are found, again, certainly does not exclude Hooper from being in that residence at all. And it is all the other evidence, Merrill and Redman's testimony, identifying Hooper, identifying the clothing they were wearing, was consistent with Nina Louie's testimony about who went to commit this murder, also identifying the clothing. And then all the other evidence that was not from Merrill or Campagnoli, such as the plane tickets that were purchased, the surgical gloves and tape that were purchased. Although Mr. Hooper is arguing that, for example, a lot of the individuals, whether it's Louie, Merrill, I apologize if I get the name wrong, Campagnoli, Harper, they were all in this together, that their goal was to completely frame Mr. Hooper. And so if there was something that clearly demonstrated that a fact about the offense, i.e. a fingerprint in the home, or rather a fact about a crucial piece of testimony, I was never in the home, that even though we said each of these things independently is strong evidence, their argument is all four of these people were in it together with a motive to lie. And if there were this fact that cast grave doubt upon whether somebody was in the home, that sort of like throws everything out and casts all the facts in a completely new light, because four of the crucial witnesses, not including, obviously, Mrs. Redman, but four of the crucial witnesses are sort of, in their view, it is tied together. What's your response to that? And so the assumption that has to be made then, or with this idea that they're framing Hooper and Bracey, really the failure of that argument is that none of it discredits Mrs. Redman's testimony. She gets flown to Chicago and then identifies Hooper and Bracey as the killers that were in her house. And then beyond that, there was evidence independently of those four witnesses that we've discussed that put Hooper and Bracey in Phoenix. Phone calls being made to Hooper's girlfriend's mother. There was the one-way plane tickets purchased in pseudonyms or other false names with one-way tickets from Phoenix to Chicago. And basically the whole idea that they could come up with this framing these individual or framing Hooper and Bracey, but then that's who Mrs. Redman specifically identifies together with all the corroborating evidence of the surgical tape and the gloves that were discovered and the receipts that were found in Mr. McCall's vehicle that corroborated that evidence. All the independent evidence unrelated to those four individuals' testimony, in fact, corroborates their testimony amongst each other and corroborates it with Mrs. Redman. So I think in order for them to have any success on that argument, they would have to somehow connect it to Mrs. Redman. And certainly I don't think she was tied into these individuals after she had been shot in the head by them and was supposed to be one of the victims of the killing. So I don't think that they can succeed and they didn't succeed at trial on the same argument that they were framed. And even the presence of Merrill's DNA or fingerprints on the knife or his fingerprints on the residence would not cast sufficient doubt that they could achieve a reasonable probability of a not being prosecuted or convicted because all the evidence, which corroborates one another, between the four individuals, between Mrs. Redman and between the independent witnesses who are not connected, all of it's corroborated consistent and as the Superior Court found was compelling and overwhelming to find the defendant was guilty. I don't think any of that is changed by the presence of Merrill's DNA or his fingerprints in this case. All it would do is implicate Merrill further, but that doesn't mean Hooper was not involved and none of it is exculpatory to Hooper. All right. Thank you. Judge Nelson, any additional questions for the state? Okay. There's no further questions. I'd ask you to deny relief. Thank you. Actually, you know what? I'm sorry. I do have one question. If we were to rule on the Rooker-Feldman grounds as a jurisdictional holding, what would the proper ruling be? Would we affirm the district court? Would we vacate or would we just dismiss the appeal for lack of jurisdiction? Yes, you've thought about it. Yeah. So I guess, again, we would ask you to also rule on the merits. And if you decide to, and certainly find that they have no reasonable likelihood of success on their argument, I guess I'm not 100% sure what the procedural avenue is. I'm sorry. That's fine. Thank you. Thanks for weighing in on it. All right. Thank you. Thank you. Okay. I just want to wait for the time clock to change. I just want to address a few quick things. The standard as it is applied now, it forces the petitioner to disprove the case against them before they're granted testing. And that is what makes this a categorical challenge because of the unconstitutional way in which this statute is being interpreted. I do also want to note, with regards to Mrs. Redmond's testimony, the contention is that Arnie Merrill or George Campagnoni's fingerprints inside the home does not disprove Marilyn's testimony. This court, again, I understand is very familiar with the facts of the case. This court also seems to be aware of the Brady issues that are before the lower court. With regards to that, the testimony of Marilyn Redmond is anything but certain. There are a lot of memory, stress, and perception issues that occurred with regards to everything. As we have recounted for this court and for all of the other courts, she went from too afraid to look at them, to they were all wearing masks, to only two of them were wearing masks, to they were all clean shaven, and she was suddenly able to identify all of them. There's also the additional Brady issue that I don't want to spend too much time on because I know that's not before the court, but that obviously brings an issue with regards to the ultimate lineup that occurs. Mrs. Redmond's testimony, the one thing that has always remained consistent, although not much else has, the one thing that remained consistent is that there were three people in her home. If Meryl's fingerprints are in there, if Campagnoni's fingerprints are in there, nothing in her testimony ever accounts for a fourth or a fifth person in her home. So that completely undermines not only the testimony of Meryl, of Campagnoni, of all of the other people who are in cahoots together, but it also undermines Marilyn's testimony. And it would show that she has- She's never able to identify Mr. Hooper as being one of those men. We don't know who those two men are, but she's not able to identify Mr. Hooper as being one of those men. With regards to the receipt from Long's Drugstore that was found in McCall's car that had McCall's fingerprint on it, and McCall admitted ultimately in his allocution that he did commit that crime. So that, again, does not place Mr. Hooper in or around the Phoenix area. With regards to the phone calls, there are phone records that are, I believe, part of Trial Exhibit 97 that are all of the phone records. And the phone records show that the numbers that were called on New Year's Eve, the one that belonged to Ann Harris, that was also a number that had been called previously. And that was Meryl's house calling a Chicago number. But Ann Harris was the mother of Hooper's girlfriend, correct? Yes. So on New Year's Eve, when Hooper's alibi witnesses testified that he was in Chicago, Meryl's home, which is where Hooper was supposed to have been at least part of the time, made a call to Hooper's girlfriend's mother. Hooper actually at that time lived with his girlfriend at her mother's home. So it would have reasonably been a phone number that Meryl would have used to call Hooper. So it, again, does not place Mr. Hooper in Phoenix at the time. I think that summarizes all of the additional evidence. I'm not sure if I missed any other pieces. Well, I mean, on the plane tickets, your view is, yes, they bought. There were plane tickets that were used to return to Chicago, but it was just sort of randomly to other people. And because no one identified Hooper or Gracie as the passengers, that really is of limited value. That would be correct. And I believe there was other testimony at trial that Mr. Cruz was known to fly back and forth between Phoenix and Chicago, and it just may have well been him and somebody else. It's one of those things. Unfortunately, we won't ever know because it was different. And again, the prior trip to Chicago, which your client's case presentation to the jury admitted was because he was solicited to kill other people and he declined that solicitation. And that's why he was previously in Arizona, not having anything to do with the victims here. I believe the testimony that he brought forth was that he was in Phoenix early in December for. Is that what you're talking about? Yes. That he was solicited to kill other people and he declined that. That is my recollection of his testimony. Yes. And the plane tickets were they delivered to Merrill's house? Yes. Well, that is what Dean Bauer says. Dean Bauer did testify. He bought the tickets and he brought them to Merrill's house. And it's, in fact, George Campagnoni's testimony that then makes that connection of the plane tickets going to Mr. Hooper. So, again, if George Campagnoni's fingerprints, the same person who's been committing these same home invasions, if his fingerprints are found in the Redmond home, specifically on the closet door or specifically on that tape spool, both things that were by testimony, things that the intruders touched, everything falls apart. Everything crumbles. Judge Bennett, anything further? No, thank you, Judge Nguyen. Judge Nelson? Miss List? We would just ask you to grant relief. All right. Thank you. Thank you very much. The matter is submitted. And courts in recess. Thank you. Thank you. This court for this session stands adjourned.
judges: NGUYEN, BENNETT, NELSON